IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: ) | |
| ) | |
| THE GATEWAY ENGINEERS, INC. ) | |
| ) | 2:09-mc-209 |
| *********************** ) | |
| ) | |
| MACK INDUSTRIES, INC. ) | |
|          Plaintiffs, ) | |
| ) | |
|     v. ) | |
| ) | |
| EDWARD T. SITARIK CONTRACTING, ) | |
| INC., ) | |
|          Defendant. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

    Presently before the Court is the MOTION TO QUASH (Docket entry number 1) filed by movant The Gateway Engineers, Inc., and the MEMORANDUM IN RESPONSE TO THE GATEWAY ENGINEERS, INC.'S MOTION TO QUASH SUBPOENA (Doc. No. 5). The motion is ripe for disposition.

**I.   STATEMENT OF THE CASE**

    Movant seeks to quash a subpoena served upon it by Sitarik Contracting, the defendant in a civil action in a sister district. The underlying case was initiated by way of a complaint filed in U.S. District Court in the Northern District of Ohio on August 6, 2007 at case number 1:07-cv-2402. The following facts are taken from the pleadings. Plaintiff Mack Industries, Inc. ("Mack Industries") entered into a contract with Defendant Edward T. Sitarik Contracting, Inc. ("Sitarik Contracting") to provide Defendant with various materials and services to be used in the construction of a sewer in Cecil Township, Pennsylvania. The Cecil Township Municipal

Authority ("CTMA"), a non-party to the civil action, hired Defendant Sitarik Contracting to serve as the general contractor for the project.  Movant Gateway, also a non-party to the case, served as the engineering firm to the CMTA on the project.  The complaint alleges nonpayment by Defendant to the Plaintiff.  The affirmative defenses to the claim and a counterclaim filed by Defendant allege that the manholes provided by Plaintiff Mack Industries leaked, which caused great expense for remediation and consequent delay in completing the project, which formed the basis for CTMA to claim a breach of its contract with Sitarik Contracting.

       The subpoena at issue here was served on Movant Gateway Engineers on June 22, 2009, by Defendant Sitarik Contracting, and generally sought various documents and file materials related to the construction project.  Earlier in discovery, Plaintiff Mack Industries served subpoenas ("Mack subpoenas") on Ed Kuenzig and Scott Rusmisel, two employees of Movant, on or about March 25, 2009 .  Each of those subpoenas directed to respective witnesses to bring documents pertaining to the Cecil Township Interceptor Project to depositions scheduled on April 3, 2009.  While some documents were produced by the witnesses, Defendant learned during the depositions that not all documents requested were produced.  The reason for this was explained by Movant in its Motion to Quash.  More specifically, in response to the Mack subpoenas, Kuensig and Rusmisel, with the assistance of counsel, "spent multiple hours reviewing thousands of pages of documents related to the Project, and thereafter produced any and all documents in its possession relevant to the Case at their depositions."  Doc. No. 1 at ¶ 13.  At the depositions, each witness admitted that various other documents existed related to the Project that were not produced.  *See, e.g.*, Exhibit 4 of Doc. No. 5 at transcript p. 39 (Rusmisel admits that there could be email correspondence among members of the design team and field

personnel over the issue of leaks in the manhole gaskets that were not produced), Exhibit 4 at transcript pp. 48-49 (Rusmisel admits that he maintained time sheets identifying the dates in which he was present on the site and the work he performed that were not produced); *see also*, Exhibit 3 at transcript pp. 147-150 (Kuenzig admits that inspection reports regarding the installation of the sewer lines exist and were not produced).  On June 22, 2009, Defendant Sitarik issued a subpoena to Movant Gateway for documents pertaining to the project.  On July 13, 2009, twenty-one days later, Gateway Engineers moved to quash, arguing that responding to the subpoena, or more specifically, renewing the same efforts undertaken in response to the Mack subpoenas, would amount to an undue burden.  It is important to further note that Movant has not sought relief based upon any claim of privilege, or that any of the requested information is confidential, potentially embarrassing, beyond its control, involves trade secrets, or otherwise protected.

**II.     DISCUSSION**

Federal Rule of Civil Procedure 26 defines the methods, scope, limits and process of discovery.  Section (b) of that rule establishes the scope and limits of discovery.  It provides that parties may obtain discovery regarding any party's claim or defense.  Rule 26(b) also provides that for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  In interpreting Rule 26(b)(1), district courts must be mindful that relevance is a broader inquiry at the discovery stage than at the trial stage.  *Nestle Foods Corp. V. Aetna Cas. And Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of the admissible evidence."  Fed.R.Civ.P. 26(b)(1).

While broad, discovery is not boundless.  Rule 26(b)(2) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information.  The Third Circuit recognized this power stating that "[a]lthough the scope of discovery under the Federal Rules is ... broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Specifically, the rules provide that the frequency or extent of discovery otherwise permitted under the rules or by local rule shall be limited by the court if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C).

The Court's power to quash or modify a subpoena inherently lies within the provisions to enter a protective order under Fed.R. Civ.P. 26(c).  A motion to quash is similar to a motion for a protective order that discovery not be had under Rule 26(c), and is judged under similar standards.  9 James W. Moore et al., *Moore's Federal Practice* § 45.50[2] (3d ed. 2008).  Federal Rule of Civil Procedure 26(c)(1) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including the following: (A) forbidding the disclosure of discovery; and (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

A court may quash or modify a subpoena if it fails to allow reasonable time for compliance, requires a non-party deponent to travel over 100 miles from his/her residence, or subjects a person to undue burden.  Fed.R.Civ.P. 45(c)(3)(A)(i)-(iv).  The "burden of proving that a subpoena is oppressive is on the party moving to quash." *Linder v. Department of*

*Defense*, 133 F.3d 17, 24 (C.A.D.C. 1998)(*quoting Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir. 1984)). Whether a burdensome subpoena is reasonable "must be determined according to the facts of the case," such as the party's need for the documents and the nature and importance of the litigation. *Id.* Movant makes various arguments why responding to the subpoena would amount to an undue burden, the most predominant of which is the general averrment that the requested information is not relevant. All bases will be addressed *in seriatim.*

Federal Rule of Civil Procedure 26 allows for discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). A federal court has the authority to quash a subpoena that seeks material which is clearly irrelevant. 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 2459, at 42 (1995). By incorporating reference to Fed.R.Civ.P. 26(b), Rule 45(d)(1) applies an "exceedingly broad" standard of relevancy to a subpoena seeking material from a non-party. *See* Advisory Committee Notes to Subdivision (d) of Rule 45 of 1991 Amendments; 9A Wright & Miller, supra, § 2459, at 42. The relevancy threshold is not high: material sought need not be admissible at trial, but must be relevant to the subject matter of the litigation and reasonably calculated to lead to admissible evidence. *See* 9A Wright & Miller, supra, § 2459, at 45; *see also* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure: Civil 2d § 2008, at 101 & n. 7 (1994) ( "The proposition stated in the text is now so well settled that the cases cited are only illustrative of many others.")

The broad scope of discovery is necessary given the very nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial. Those

facts which, with the progression of discovery, are not to be considered in determining the ultimate issues may be eliminated in due course. *Cash Today of Texas, Inc. v. Greenberg*, 2002 WL 31414138 (D.Del. 2002). Therefore, only if "it is palpable that the evidence sought can have no possible bearing upon the issues" should a court deny discovery by quashing a subpoena. *Id.* (*quoting Hercules Powder Co. v. Rohm & Hass Co.*, 3 F.R.D. 302, 304 (D.Del. 1943)). If a party objects to the production of information or documents on the basis of relevancy, then the objecting party "must show specifically how each [request] is not relevant..." *Highland Tank & Mfg. Co. v. PS International, Inc.*, 227 F.R.D. 374, fn 8 (W.D.Pa. 2005)(*quoting Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982)). Once done, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to the issues in litigation. *Andritz Sprout-Bauer v. Beazer East*, 174 F.R.D. 609, 631 (E.D.Pa. 1997).

In addition, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgement on what constitutes relevant evidence thereunder.'" *Truswal Systems Corp. V. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed.Cir. 1987)(*citing Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961). If relevance is unclear, Rule 26(b)(1) indicates that the court should be permissive. *Id.* (*Citing Heat & Contro, Inc. V. Hester Industries, Inc.*, 785 F.2d 1017 (Fed.Cir. 1986).

In the instant case, Defendant Sitarik Contracting seeks the disclosure of documents relating to the interceptor project. With its motion, Movant argues that the documents sought "are not relevant to whether Sitarik has wrongfully withheld payment from Mack and/or whether Mack has supplied defective and nonconforming manholes to Sitarik". Doc. No. 1 at ¶¶ 27, 34,

41, 50, 65, and 75. In response, Defendant articulates the following bases of relevance:

    Request No 1: Any and all internal email correspondence related to Sitarik's work on the Interceptor Contract.

    Response as to relevance: This request is especially important because the reasons for Sitarik's termination are at issue and therefore all correspondence is relevant.

    Request No. 2: Any and all correspondence to and from Romel Nicholas, Esq., including emails.

    Response as to relevance: It is believed Gateway's only dealings with CTMA are related to this project. The correspondence is very likely to lead to evidence concerning reasons for the termination, why it occurred and the quality of Mack's work. There is no privilege as Romel Nicholas is not Gateway's attorney.

    Request No. 3: Any and all records of any homeowners connecting to the system as well as sufficient information regarding the date of connection from each homeowner.

    Response as to relevance: Homeowner connections are important because it is believed the system was disturbed by homeowners given permission to connect up by Gateway and CTMA before tests were made so that the testing procedures were defective.

    Request No. 4: Any and all testing reports or summaries, including any underlying data, such as original notes or log books regarding lamping, mandrel, vacuum, etc. testing performed.

    Response as to relevance: Gateway and CTMA provided test results for time periods far after the project was finished. Mack requires earlier test results that may reflect that the system was properly constructed but, due to other reasons, may not test out level now. For example, all of Mack's work was approved and per spec., Gateway claims the pipe is not level. The Gateway spec could be the problem because the trench backfill was not properly specified or the trench was not stable.

    Request No. 5: A copy of the Utility Conflict Log (or a name similar).

    Response as to relevance: This dealt with utility interference with work, generally unmarked on the drawings - the responsibility of Gateway and CTMA - if unmarked utilities interfered with Sitarik's work, then it caused delay and that was the fault of CTMA and Gateway, its engineer.

Request No. 6: Any and all records describing the type or nature of a leak, i.e., leaking at pipe end or leaking at the boot end, etc.

Response as to relevance: This directly relates to Mack's manholes and reason for Sitarik's termination.

Request No. 7: Any and all inspector reports not previously provided.

Response as to relevance: This relates to the reason for Sitarik's termination.

Request No. 8: Copies of all KLH Engineers reports to Cecil Township Municipal Authority (which were included in summaries by Gateway).

Response as to relevance: KLH Engineers came into the picture following CTMA's dismissal of Gateway and inspected, tested and reviewed the system after installation was complete.  It is the KLH reports that criticize Sitarik - do they criticize Gateway, CTMA?  Gateway and CTMA produced some reports - it is unknown if others were favorable to Sitarik - in fact, the refusal to produce would imply they were favorable.

Request No. 9: Any and all "as built" drawings and notes by Genet Fleming.

Response as to relevance: As builts are made after the work is complete.  They should reflect differences from as designed to as built and may reflect that as built was instructed by Gateway and CTMA.

Request No. 10: Any and all "to do" lists and any underlying supports such as log books as well as documents from which the summary was made of the deficiencies.

Response as to relevance: This is important as only summaries were provided and at the depositions it was disclosed that there are numerous other documents that would explain how the project was being performed.

Request No. 11: Any and all time sheets for Edward G. Kuenzig and Scott Rusmisel as well as their complete log books for the project.

Response as to relevance: Time sheets are critical as they show when the deponents were on the job, so that it might contradict their testimony.  Log Books are contemporaneous with diaries made during the course of a project and will reflect thoughts at the time and not those that are supportive of the decision of CTMA not to pay Sitarik.

*See* Doc. No. 5 at pp. 6 - 9.  In further support of its position as to relevance, Defendant Sitarik

attached the deposition transcripts of Gateway employees Kuenzig and Rusmisal.  Doc. No. 5 at Exhibits 3 (Kuenzig deposition) and 4 (Rusmisal deposition).  Movant freely admits that in responding to the Mack subpoenas and answering questions during the deposition, Gateway determined for itself the scope of relevance, and responded in accordance with that determination.  For example, the deposition testimony of Kuenzig acknowledged a deliberate filtering to exclude Gateway documentation that in his estimation was not 'relevant'.  *See, e.g.,* Kuenzig deposition at transcript pp. 65 (in describing the utility conflict log in response to a question by Plaintiff Mack's counsel, a document not provided in response to the Mack subpoena, the witness testified "Yeah, I know what you request, but it's not *really* relevant to anything to do with manholes, but I know what the log would be.")(emphasis added); 74 (in describing repairs to the installed manholes that are required, including the need to replace lock bars, the witness testified, "the lock bars are supplied by another supplier, East Jordan Ironworks, and they are not supplied by Mack, nor do they have anything *necessarily* to do with Mack's product.")(emphasis added).

      The essence of the dispute between Mack Industries and Sitarik Contracting is whether one party breached the contract between the two, a contract for goods and services to be provided by Mack to Sitarik as part of the larger interceptor project.  The civil action complaint does not specifically articulate the terms of that original contract nor does it define in great detail the relationship between the two parties.  After receiving the Mack subpoenas, Movant incorrectly determined that the only information that is relevant is that which involves the actual goods provided by Mack, namely the manholes.  More specifically, in responding to questions by counsel for Plaintiff Mack Industries at the deposition, Ed Kuenzig reflected a misconception

that the dispute between Mack and Siatrik was limited to the question of whether Mack supplied manholes that were either defective as a result of Mack's manufacturing process or that did not conform with regulatory standards.  *See, e.g.,* Exhibit 3 of Doc. No. 5 at transcript pp. 56, 59, 60-61, 73, and 74; *see also, e.g.*, Doc. No. 1 at ¶¶ 27, 41 (Movant's argument that the Defendant's subpoena "seeks documents that are *completely irrelevant and immaterial* to whether Sitarik has wrongfully withheld payment from Mack and/or *whether Mack supplied defective and nonconforming manholes to Sitarik*.")(emphasis added) 50, 65, and 75.  Such a determination is tantamount to a legal conclusion on Gateway's part that Mack's obligation under the contract was simply to provide goods as opposed to goods and services.  The justification for making such a distinct limitation appears to have been done entirely internally at the discretion of the subpoenaed witnesses and Gateway's in-house counsel after receiving Mack's subpoena.  Even this *post hoc* determination, however, appears to be inconsistent with Movant's own previous understanding of the relationship between Mack and Sitarik.  A meeting was conducted on or about January 12, 2007, involving the Municipal Authority, Gateway, Mack, and Sitarik to discuss infiltration issues in manholes.  At the conclusion of that meeting, W. Scott Rusmisal was under the belief that "Mack personnel were going to be present on-site to review the installation, to review the material, make any suggestions or corrections as necessary".  Exhibit 4 of Doc. No. 5 at transcript p. 50.  Clearly, at least to the understanding of Gateway's project manager (Rusmisel) following the meeting, Mack's involvement in the project extended beyond simply providing manholes to Sitarik, and apparently extended in some manner to overseeing the installation.

      In light of the above, Movant has failed to show specifically how the information

requested is not relevant.  Accordingly, the Court is persuaded that the documents sought in the subpoena appear to be relevant to the subject matter involved in the action and/or are reasonably calculated to lead to the discovery of admissible evidence.

Based upon the foregoing, the remaining arguments of Movant collapse.  Movant argues that the information sought has previously been produced in response to Mack's subpoena, and therefore any further production would be unreasonably duplicative.  Doc. No. 1 at ¶¶ 28, 37, 42, 47, 53, 57, 61, 66, 70, and 74.  In accordance with the above determination, that argument fails.  In light of Gateway's erroneous perception of what is to be considered relevant, Gateway must re-examine documents it originally considered to be nonresponsive and to determine whether any documents were appropriately withheld.  *Accord. Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 78, 95-6 (D.D.C. 1998).  Movant argues that requests are overly broad and that responding to them would be  unduly burdensome.  Doc. No. 1 at ¶¶ 27, 34, 35, and 61.  Movant, however, fails to make any showing why it would now be unduly burdensome when it purportedly "spent multiple hours reviewing thousands of pages related to the Project" in response to the Mack subpoenas without any objection.  Ostensibly, Movant considers it a burden to have to conduct a review of all documents a second time.  The need to do so, however, is entirely the result of Movant's incorrect assumptions taken in the course of the first such review.  For that reason, the burden is not undue.

Accordingly, the MOTION TO QUASH SUBPOENA filed by Movant (Doc. No. 1) is DENIED.  The documents shall be produced on or before October 26, 2009.

SO ORDERED this 9th day of October, 2009.

                BY THE COURT:

                s/ Terrence F. McVerry
                United States District Court Judge


cc:    Robert J. Brown, Esquire
        Email: rbrown@legerball.com

        Alicia M. Hathcock, Esquire    **via first class mail**
        Lesiak, hensal & Hathcock
        Suite 210
        3995 Medina Road
        Post Office Box 1329
        Medina , OH 44258

        John C. Oberholtzer, Esquire    **via first class mail**
        Oberholtzer, Filous & Lesiak
        39 Public Square
        Suite 201
        Post Office Box 220
        Medina , OH 44258-0220

        Maurice A. Nernberg , Jr., Esquire
        Email: man@nernberg.com

        Rami M. Awadallah, Esquire    **via first class mail and email**
        Email: rawadallah@manniongray.com

        Thomas P. Mannion, Esquire    **via first class mail and email**
        Email: tmannion@manniongray.com